## Cuker v. Mikalauskas

*Stanley R. Wolfe,* for plaintiff.
*Alan J. Davis,* for defendant.

DiNUBILE, *J.*, February 26, 1998—

## BACKGROUND

In 1995, Philadelphia Electric Company filed a motion for summary judgment seeking termination of the above-captioned minority shareholder derivative actions. When this motion was denied by the Court of Common Pleas of Philadelphia, PECO sought and ul-

timately was granted extraordinary relief by the Supreme Court of Pennsylvania. Their decision is set forth in *Cuker v. Mikalauskas*, 547 Pa. 600, 692 A.2d 1042 (1997). The Supreme Court, applying the business judgment rule, remanded the case to this court for the purpose of holding a hearing to determine whether the actions of PECO's board of directors through the appointment of a special litigation committee, acted properly in dismissing the derivative actions.

Pursuant to this directive, a hearing was held by this court. The *Cuker* Supreme Court opinion specifically directed the lower court to apply the following criteria and burden of proof in rendering a factual determination regarding the propriety of the PECO board's action: (1) whether the SLC was disinterested and independent; (2) whether it was assisted by counsel who were disinterested and independent; (3) whether the SLC conducted an *adequate* investigation; and (4) whether the SLC rationally believed its decision was in the best interest of the corporation—did it act in good faith. The Supreme Court opinion also made reference to sections 7.02-7.10 and 7.13 of the ALI Principles (American Law Institute). The *Cuker* court placed the burden of proof on plaintiffs to show impropriety on the part of the board.

Applying the above-stated criteria to the facts presented at the hearing, this court concludes that plaintiffs failed to meet their burden of proof. Consequently, the above actions are terminated. The court will discuss each criteria as it relates to the facts found.

## FINDINGS OF FACTS

### (1) *The Special Litigation Committee Was Independent and Disinterested*

The facts established beyond any doubt that the three members of the SLC were impartial and unbiased and

that their decision was completely independent, disinterested and reasonable. All three members were experienced, sophisticated business executives with impeccable backgrounds. Prior to their appointment to the SLC, they had served as outside directors of PECO. That is, although they were directors, they were not officers or employees of the corporation.

Their appointment to the litigation committee occurred on June 28, 1993. The chairman, Nelson G. Harris, had a long and distinguished business career. He was an attorney, C.P.A., and former director and CEO of Tasty Baking Company. The other two members were James A. Hagen, past chairman of the Conrail board of directors, and Susan W. Catherwood. She is presently vice president of the Board of Trustees of the University of Pennsylvania, chairman of the University's Health System, and a board member of the Pew Charitable Trusts and the Glenmede Corporation. None of the three had any financial, business, familial, or substantial social connections with the defendant board of directors of PECO.

As evidence that the SLC was not independent or disinterested, plaintiffs pointed to the fact that PECO's board chairman and one of the defendants in this suit, Joseph F. Paquette Jr., had asked Mr. Hagen and Mrs. Catherwood to serve on the SLC. Further, it appeared that Mr. Paquette was the person who had asked Mr. Harris to join the PECO board as an outside director in 1989. These facts on their face, however, are not sufficient to carry plaintiffs' burden of proof that Mr. Harris, Mr. Hagen, and Mrs. Catherwood did not act as independent and disinterested persons in deciding to terminate the derivative suit. And, plaintiffs could point to no additional facts to bolster this argument. Rather, PECO introduced evidence that Mr. Paquette did not tell Mr. Hagen or Mrs. Catherwood anything about the purpose of the SLC but only referred them

to PECO's general counsel, James W. Durham, and that Mr. Paquette had no further contact with the SLC members during the decision-making process.

Plaintiffs also pointed to the fact that many of the PECO directors named as defendants in the shareholder derivative suits, as well as the non-defendant board members and the SLC members, served on business and charitable boards together. Although it is true that there may have been some interlocking directorships (the record is unclear what particular PECO board members served on what particular boards with the SLC members), there was no evidence that any relationships which might have developed as a result impinged upon the objectivity of the SLC members. For example, it appeared that numerous PECO board members were involved with the United Way charity, and that Mr. Harris and Mr. Hagen served on the board of the Philadelphia First Corporation with Mr. Paquette. It cannot be said that Messrs. Harris and Hagen were rendered incapable of disinterested or independent action as a result, however, as virtually all of the board members were associated either with United Way or with charities like the Philadelphia First Corporation. If SLC members were to be disqualified based on interlocking directorships, then it is likely no one would have been eligible to serve.

The court finds as fact that no member of the PECO board, whether named as defendants in the shareholder suits or not, attempted to influence the decision of the SLC in any way. There was no evidence that the defendant board members participated in the appointment of the SLC or took part in the SLC's decision-making process regarding termination of the shareholder suits.

Plaintiffs argued that the members of the SLC were incapable of objective judgment since they were participating members of the PECO board and two of the

three served on the board's audit committee at the time of the allegedly wrongful actions set forth in plaintiffs' complaint; the allegations involved credit and collection issues. As further evidence of the impossibility of objectivity, plaintiffs pointed out that two of the three members of the SLC also served on the PECO board's compensation committee which drew up Mr. Paquette's compensation package. The SLC must have been biased in its assessment of Mr. Paquette's performance, the plaintiffs conclude. As a matter of fact, the court took these factors into account in determining whether the members of the SLC were independent and disinterested, and concluded that these factors had no significant bearing on the decision reached by the SLC.

### (2) *The SLC'S Counsel Was Independent and Disinterested*

The court also finds that counsel appointed to represent the SLC, the Philadelphia law firm of Dilworth, Paxson, Kalish & Kauffman was fair, impartial, disinterested and independent.

Following appointment of the SLC, general counsel for PECO, James W. Durham, submitted eight proposals from law firms wishing to represent the SLC.[1] Mr. Durham's sole responsibility was to determine whether any conflict of interest existed between these eight law firms and PECO. In its choice of counsel, the SLC was not restricted to these eight firms; after reviewing the proposals, however, the SLC was satisfied it could choose counsel from among the firms submitting proposals. Two firms were eliminated because of a possible conflict of interest between them and the SLC's members. The Dilworth firm was then selected.

---

1. Seven of these firms were from Philadelphia and one was from Chicago.

The evidence adduced at trial demonstrated that the Dilworth firm served the SLC by calling together the great mass of documents involved and in conducting and transcribing the necessary interviews so that the SLC could more easily review them. Plaintiffs presented no evidence that the Dilworth firm was biased or acted improperly in any way during the SLC's deliberative process or the rendering of its decision. Rather, plaintiffs noted that the Dilworth firm had previously represented PECO in other matters and asserted that this fact alone disqualified it. These prior cases, however, had all terminated at least two years prior to the Dilworth firm's appointment as counsel for the SLC. During the time the Dilworth firm represented the SLC, it had no ongoing litigation with PECO and had not had such for some time. Plaintiffs' implications are simply not sufficient to establish that the Dilworth firm was not impartial or disinterested in its representation of the SLC.

### (3) *Adequacy of the Investigation*

The facts put forth at trial proved clearly that the SLC's investigation, which concluded that the derivative suits should be dismissed by the PECO board, was not only adequate but also thorough, competent, and fair. Plaintiffs' attack on the adequacy of this investigation fell far short of the required proof.

The derivative lawsuits against PECO were based on criticism of PECO's collection and credit procedures, specifically in regards to obtaining payments on delinquent accounts. In the course of investigating the allegations set forth in these suits, the SLC reviewed hundreds of documents and interviewed approximately 22 witnesses. The SLC began its investigation in September 1993. It presented a voluminous draft report of its findings to the board on February 14, 1994, concluding that the PECO board acted properly and with due care in addressing its collection and credit problems

and recommending that the derivative suits be dismissed.[2] The SLC subsequently submitted its final draft to the board. The board approved the report of the SLC and dismissed the derivative suits on March 14, 1994.

Plaintiffs argued at trial that the investigation was inadequate since the SLC failed to interview a consultant who assisted in preparing the Ernst & Young report of May 1991, which triggered the derivative action. First of all, the report in question was commissioned by PECO to assist it in improving its general overall operations and was not limited solely to PECO's credit and collection procedures. The committee chose to interview Steven Allen, the Ernst & Young partner responsible for compiling the report. Mr. Allen was the supervisor on the project and was at least as qualified as the consultant to comment on the contents of the report. In his interview, Mr. Allen informed the committee that the report was never intended to provide grounds for a derivative action. The SLC also reviewed the extensive report of December 23, 1993, prepared by the firm of Temple, Barker & Sloane, which PECO hired to analyze the findings of the Ernst & Young report. In light of this in-depth analysis of the two reports, the mere fact that the SLC failed to interview one of the many people involved is not sufficient to meet plaintiffs' burden of proof on this point. Consequently, the SLC's findings should not be disturbed by this court.

Plaintiffs also contend that the SLC should have retained an independent auditor "instead of relying solely on Coopers & Lybrand, PECO's long-standing outside auditor." There is nothing in the record to support this contention, however. As stated, the two reports which

---

2. The SLC asked for input from the board prior to submitting its final draft.

the SLC analyzed and studied were prepared by Ernst & Young and Temple, Barker & Sloane. These independent reports furnished the SLC with more than sufficient material to reach its conclusions. The SLC did obtain certain statistical data which it needed from Coopers & Lybrand, but it was not necessary to examine any other accounting reports prepared by this accounting firm and the SLC did not in fact do so.

Plaintiffs further assert that the SLC's investigation was inadequate because it failed to interview members of the PUC to ascertain that regulatory body's position concerning PECO collection and credit procedures. The evidence at trial established that such interviews were not necessary or appropriate. Chapter 56 of the Pa. Code, which sets forth standards for collection by public utilities, demonstrates clearly what the PUC's position is on such matters. In addition, the SLC reasoned that it would make little sense to interview officers from the PUC regarding its view of PECO's internal litigation.

### (4) *Good Faith—The SLC Rationally Believed Its Decision Was in the Best Interest of PECO*

Based on all the evidence at trial, this court finds that the SLC acted rationally and with a good faith belief that its decision was in the best interest of PECO. In short, the SLC was comprised of three well-qualified and competent members who, with an unbiased eye, reviewed in a reasonable fashion the record culled from numerous documents and interviews and concluded that the derivative suits should be dismissed. There is nothing in the record to contradict this conclusion.

Instead, plaintiffs presented two expert witnesses, distinguished in their respective fields: Grover C. Brown, a corporate attorney and former judge of the Chancellory Court of the State of Delaware, and Professor Randall

K. Stutman, associate professor of Communications at Temple University. Both opined that the SLC members, because of their close connections with both defendant and non-defendant PECO board members, were incapable of objective judgment. These expert opinions, however, were based solely upon sterile hypotheticals. Plaintiffs' two experts did not have the opportunity, as the court did, to judge the demeanor and credibility of the SLC members. The court was impressed with the background, intelligence, and integrity of the SLC members, from listening to them and observing them at trial. Consequently, as the finder of fact, the undersigned rejects plaintiffs' expert testimony. This court was in a much better position to evaluate the impartiality of the SLC than were the experts who testified from a set of strained hypotheticals.

## CONCLUSIONS OF LAW

Having applied the relevant legal criteria enunciated in *Cuker v. Mikalauskas* and the appropriate provisions of the ALI Principles as set forth, *supra*, to the above-stated factual conclusions, the court concludes that the SLC and the PECO board of directors acted properly in dismissing the derivative lawsuits.

## ORDER

And now, February 26, 1998, after a hearing held on this matter from January 21, 1998 to January 23, 1998, the court grants the defendants' motion to dismiss and/or discontinue this cause of action with prejudice because the decision of the PECO board of directors to dismiss the above derivative lawsuits, based on the recommendation of its litigation committees, was proper.